# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

LAURIE ANN MOORE,

               Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.

2:16-CV-107-FVS

**ORDER AFFIRMING DECISION**

**THIS MATTER** comes before the Court based upon cross motions for

summary judgment. At issue is the validity of a decision denying Laurie Ann

Moore's claim for supplemental security income. The plaintiff is represented by

Jeffrey Schwab. The defendant is represented by Richard M. Rodriguez.

**PROCEDURAL HISTORY**

Laurie Ann Moore was born on November 1, 1968. (TR 52.) On April 8,

2013, Ms. Moore applied for Title XVI supplemental security income ("SSI"). 42

U.S.C. §§ 1381-1383f. The Social Security Administration ("SSA") denied her

initial application and her request for reconsideration, whereupon she exercised

her right to a hearing before an administrative law judge. The hearing took

place on April 8, 2015. (TR 43.) On May 6, 2015, the ALJ issued an order setting

Order ~ 1

forth the determinations she made at each step in the SSA's five-step sequential

evaluation process.  20 C.F.R. § 416.920(a)(4).

Ms. Moore accepts the findings the ALJ made at steps one through three.

That is to say, she has not engaged in substantial gainful activity since she

allegedly became disabled.  (Step one.)  She suffers from the severe impairments

identified by the ALJ, viz., "migraine headaches; degenerative changes in the

cervical spine; status post right hand injury in 1993; obesity; depression; and

anxiety."  (Step two.)  But her impairments are not severe enough to create a

conclusive presumption of disability.  (Step three.)

It is at step four that Ms. Moore's objections begin.  She alleges the ALJ

improperly formulated her Residual Functional Capacity ("RFC").  The latter is

the most she can do despite her impairments.  20 C.F.R. § 416.945(a)(1).  An RFC

is expressed in terms of an exertional level, i.e., whether the claimant is capable

of performing a job that is "sedentary, light, medium, heavy, [or] very heavy."  20

C.F.R. § 416.967.

In order to determine Ms. Moore's RFC, the ALJ had to weigh the evidence.

While the ALJ was not unsympathetic to Ms. Moore, the ALJ did not fully credit

her description of the limitations she experiences as a result of her impairments.

(TR 32.)  Nor did the ALJ fully credit the opinions of John Arnold, Ph.D., a

Order ~ 2

psychologist.  Indeed, she accorded Dr. Arnold's opinions "little weight."  (TR 33-34.)

Ms. Moore objects to the ALJ's decision to discount both Dr. Arnold's opinions and her description of the limitations she experiences.  Had the ALJ given proper weight to this evidence, says Ms. Moore, the ALJ would have found she typically suffers 15-20 migraine headaches per month, and when she is experiencing a migraine headache, which can last for hours at a time, she is incapable of performing even sedentary work.  According to Ms. Moore, no employer would retain an employee who missed as much work as she would.

The ALJ did not see it that way.  The ALJ found Ms. Moore presently is capable of performing light work (step four) and "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Step five.)  As a result, the ALJ ruled Ms. Moore is not disabled.  (TR 35-36.)

Ms. Moore asked the Appeals Council to review the ALJ's unfavorable ruling.  On February 9, 2016, the Council declined to do so.  With that, the ALJ's ruling became the final decision of the Social Security Administration.  20 C.F.R. § 416.1484(b)(2).  Ms. Moore commenced this action on April 5, 2016.

**STANDARD OF REVIEW**

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Order ~ 3

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.* As a result, the Commissioner's decision "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986). "Substantial evidence" means more than a mere scintilla, . . . but less than a preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.1988) (internal punctuation and citations omitted).

**ANALYSIS**

Ms. Moore

The ALJ gave several reasons for discounting Ms. Moore's credibility. First, the ALJ questioned whether Ms. Moore is committed to finding a job. Second, the ALJ questioned whether she has followed through with treatment recommendations that have been made by her health care providers. Third, the ALJ questioned whether Ms. Moore is a reliable reporter of information.

One of the ALJ's concerns was motivation. This concern stemmed from the fact Ms. Moore did not hold a full-time job at any time during the ten-year period before she applied for Title XVI benefits. (TR 67-69, 195-96.) Ms. Moore attributes her lack of employment to chronic migraine headaches. (TR 63.)

Order ~ 4

While headaches are part of the story, there appears to be more. On January 6, 2012, Ms. Moore advised Anna Charbonneau, a licensed mental health counselor, she had used drugs and alcohol "most of her adult life." She made a similar statement to a treating physician. (TR 432.) Thus, the ALJ reasonably wondered whether substance abuse was a significant factor in her inability to hold a full-time job. (TR 32.)

Another of the ALJ's concerns was Ms. Moore's willingness to follow treatment recommendations. This was a two-part concern. The first part involved treatment for mental health problems. The record reflects Ms. Moore had an opportunity to participate in counseling, but as of her appointment with Ms. Charbonneau, she had not done so. Consequently, during the meeting, Ms. Charbonneau "[]gently discussed [Ms. Moore's history] of no-showing and not following up." (TR 407.)

The second part of the ALJ's concern involved treatment for migraine headaches. (TR 32.) Beginning in 2013, Ms. Moore had a number of appointments with William T. Allred, M.D., a neurologist. He prescribed medication for her headaches, but also he also made a number of recommendations he thought would help her manage her headaches. (TR 434.) One of them was to sharply curtail her use of over-the-counter analgesics. Id. Although Ms. Moore continued to experience headaches (TR 425-26), Dr.

Order ~ 5

Allred's suggestions seemed to help, at least for a while.  (TR 421 ([Ms. Moore "is

currently satisfied with the headache control.")) However, by May of 2014, her

condition had deteriorated.  (TR 415.)  Dr. Allred attributed the changes to a

combination of mental health problems, "hormonal changes," and "analgesic

overuse."  (TR 417.)

 The ALJ's final concern was Ms. Moore's reliability.  The ALJ decided she

has a tendency to exaggerate her symptoms when she thinks it serves her

interest to do so.  For example, Ms. Moore told Dr. Arnold she had been in six

vehicle collisions.  (TR 308.)  By contrast, she told Steve Hufman, M.D., she had

been in three collisions.  (TR 303.)  Were that the only instance of exaggeration,

the ALJ might not have been concerned.  But as the ALJ pointed out, there was a

second instance.  During Ms. Moore's appointment with Dr. Allred on May 5,

2014, she reported she was seeing a counselor.  (TR 415.)  The ALJ looked in the

record for evidence indicating Ms. Moore was participating in counseling at that

time, but the ALJ was unable to confirm the accuracy of her statement.  (TR 32.)

 These, then, are the ALJ's reasons for discounting Ms. Moore's testimony.

The issue is whether they are adequate.  The test is well established.  Absent

evidence of malingering, an "ALJ may reject the claimant's testimony regarding

the severity of her symptoms only if he makes specific findings stating clear and

convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir.1996).

It is instructive to consider Ms. Moore's employment history. This is not a case in which the applicant had been working steadily until the alleged onset of disability. Instead, this is a case in which the applicant had been unemployed for years before disability allegedly began. At least two circumstances appear to have played a role in Ms. Moore's inability to hold a job. One was substance abuse. Another was chronic migraine headaches.

Let there be no misunderstanding. Ms. Moore's migraine headaches are a serious matter. However, there is reason to think she can manage her headaches if she carefully follows treatment recommendations. Two recommendations are especially important. Ms. Carbonneau gently, but firmly, urged Ms. Moore to participate in counseling. Ms. Moore says she has done so, but there are no records from mental health professionals confirming her claim. The other critical recommendation involves the use of analgesics. Dr. Allred repeatedly admonished her to limit her consumption of them. When she followed his recommendation, she experienced fewer headaches. When she did not follow his recommendation, she had more headaches and more severe headaches.

Order ~ 7

Finally, there is the matter of Ms. Moore's reliability as a reliable reporter. The ALJ reasonably was concerned. Her concern arose, in part, as a result of comments Ms. Moore made about counseling. As will be recalled, she told Dr. Allred she was participating in therapy. (TR 415.) If she was, one would expect to find records of counseling sessions, but there do not appear to be any. The absence of such records tends to undermine her credibility.

In conclusion, the reasons the ALJ provided for discounting Ms. Moore's credibility are sufficient to support her determination. Ms. Moore was not actively participating in the work force long before the alleged onset of disability. She has failed to follow important treatment recommendations, and she has not always been a reliable reporter of information.

Psychologist John Arnold

The Washington State Department of Social and Health Services asked John Arnold, Ph.D., to perform a psychological evaluation of Ms. Moore. Dr. Arnold examined her on April 30, 2013. Dr. Arnold administered several simple tests, including both the Beck Depression Inventory and the Beck Anxiety Inventory. (TR 308.) Given the results of the tests, and given his observations, Dr. Arnold decided Ms. Moore was anxious and depressed. (TR 309.) Having made that determination, he went on to assess her ability to engage in sustained

Order ~ 8

activity over a normal workday.  (TR 310.)  He found one marked impairment and eight moderate impairments.  (TR 311.)

Without question, an examining expert's findings are entitled to substantial deference.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998) (an ALJ's decision to discount the opinion of an examining expert may be upheld only if the ALJ provided "specific and legitimate reasons" that are "supported by substantial evidence in the record").  However, substantial deference does not mean uncritical acceptance.  Before accepting an expert's findings, an ALJ must determine whether they are based upon adequate data and whether the expert arrived at them by means of an appropriate methodology.  In this instance, the ALJ was troubled by two circumstances.

One of the ALJ's concerns was whether Dr. Arnold's findings adequately explain all of the data.  Of particular interest to her were the results of the mental status exam that Dr. Arnold conducted.  The results of the exam are set forth on page four of a form that is entitled "Psychological/Psychiatric Evaluation."  (TR 308-311.)

Dr. Arnold began by summarizing his observations.  He indicated Ms. Moore appeared depressed and anxious.  (TR 311.)  That said, he also indicated her speech was progressive and logical, she was open and cooperative (even talkative), and her affect was only mildly constricted.  *Id.*

Order ~ 9

Dr. Arnold then proceeded to describe Ms. Moore's cognitive functions. He reported Ms. Moore did not fall "within normal limits" with respect to "concentration." *Id.* That said, he also reported she fell within normal limits with respect to "thought processes and content," "orientation," "perception," "fund of knowledge," "abstract thought," and "insight and judgment." *Id.*

After reviewing Dr. Arnold's report, the ALJ appears to have asked a sensible question, "If Ms. Moore is as impaired as Dr. Arnold indicates, why the ambiguity in the results of the mental status exam?[1] " The ALJ looked in Dr. Arnold's report for an answer to her question, but she could find none. Nor could she find a meaningful explanation of the process by which Dr. Arnold arrived at his findings. In essence, he just checked boxes. Given the absence of a meaningful explanation, the ALJ had no way to assess either the validity or the reliability of Dr. Arnold's findings. Consequently, she properly accorded "little weight" to his pessimistic assessment.

**RULING**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by

---

[1] That she posed this question, or one like it, reasonably may be implied from what she wrote in her ruling.

Order ~ 10

substantial evidence.  42 U.S.C. § 405(g).  Here, the ALJ's written opinion indicates she engaged in a careful review of the evidence.  She provided clear and convincing reasons for discounting both Ms. Moore's description of her symptoms and the pessimistic assessment of Dr. Arnold.  Since the ALJ's analysis and conclusions are supported by substantial evidence, the Court will affirm her ruling.

**IT IS HEREBY ORDERED**:

1. The defendant's motion for summary judgment (**ECF No. 18**) is **granted** and the plaintiff's (**ECF No. 13**) is **denied**.

3. The ALJ's decision of May 6, 2015 (**TR 411**) is **affirmed**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this 31st day of May, 2017.


                         s/Fred Van Sickle
                         FRED VAN SICKLE
                    Senior United States District Judge